UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case Number 10-20635
Honorable David M. Lawson

v.

MANUEL ANTONIO SOTO,

Defendant.
_______________________________________/

**ORDER DENYING THIRD MOTION FOR COMPASSIONATE RELEASE**

Defendant Manuel Antonio Soto is serving the last months of a 216-month prison sentence, presently confined by the Bureau of Prisons at the Federal Medical Center in Butner, North Carolina. The case is back before the Court on Soto's third motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Soto was convicted of multiple charges for his role in a Chicago-based drug trafficking organization. The convictions and sentence were the subject of extensive post-conviction litigation, which ultimately has resulted in his current sentence. His expected release date is June 26, 2027. He now asks for compassionate release based on alleged delays in medical treatment, his recent stomach cancer diagnosis, as well as his continuing rehabilitation.

Soto's medical circumstances do not warrant compassionate release because his condition is not terminal, it does not substantially interfere with his ability to perform self-care, and he is not being denied necessary medical care. Consequently, he has not identified a policy statement by the United States Sentencing Commission that supports a reduction in his sentence, and he has not established extraordinary or compelling reasons for early release. Therefore, the Court must deny the motion.

I.

The facts of the case are well known to the parties and discussed in prior opinions by this Court and the court of appeals. *See, e.g., United States v. Soto*, No. 10-20635, 2024 WL 4846837, at *1-2 (E.D. Mich. Nov. 20, 2024); *Soto v. United States*, No. 10-20635, 2019 WL 11250158, at *1-3 (E.D. Mich. Mar. 21, 2019); *United States v. Soto*, 794 F.3d 635, 642-44 (6th Cir. 2015). For the purpose of the present motion, it is sufficient to say that Soto was the leader of a Chicago-based drug trafficking organization and was convicted by a jury of multiple drug-related crimes along with three codefendants. He originally was sentenced to 43 years (516 months) in prison, but post-conviction litigation and the application of amendatory legislation resulted in the present 216-month sentence.

Soto filed his first motion for compassionate release on February 17, 2022, citing a heightened risk of complications from the COVID-19 virus and his inability to receive certain time credits against his prison term due to his status as a deportable alien. The Court held that those reasons did not satisfy the extraordinary and compelling circumstances requirement because Soto provided little documentation of his reported medical conditions, he already had been vaccinated, and the Court lacked authority to order the BOP to apply the time credits he sought. ECF No. 791, PageID.6114-16.

In May 2024, Soto filed a second motion for compassionate release, arguing that "inadequate medical care within the Bureau of Prisons (BOP), a need to care for his ailing parents, his rehabilitation, and alleged miscalculations of his Sentencing Guidelines range" justified compassionate release. *Soto*, 2024 WL 4846837 at *1. The Court found that his medical conditions were not extraordinary and compelling reasons because they were not terminal, they did not substantially diminish his ability to provide self-care, and he was not at risk of serious

deterioration in health or death. *Id.* at *4-5. The Court also determined that his desire to care for his ailing parents was insufficient because they had another caregiver, his record of rehabilitation was not "extraordinary," and the alleged errors in his sentencing could not constitute extraordinary and compelling reasons as a matter of law. *Id.* at *5-6.

Soto has a history of gastrointestinal issues dating back to at least 2022. Some of this history was recounted in the opinion on Soto's second compassionate release motion:

> Soto complained to BOP medical staff in November of 2022 that he was experiencing bloating, stomach pain, and diarrhea, which he said became worse after eating. [ECF No. 827, PageID.6348]. The BOP medical provider diagnosed him with infectious gastroenteritis and colitis and prescribed antibiotics. *Id.* at PageID.6349. In February 2023, Soto returned for treatment, complaining of streaks of blood when wiping his rectum. *Id.* at PageID.6351. Medical staff examined him and documented no concerning findings. *Ibid.* They advised him to use medicated pads from the commissary and to avoid excessive wiping. *Ibid.*

*Soto*, 2024 WL 4846837 at *2.

In 2024, Soto visited a doctor again with complaints of acid reflux. ECF No. 845-3, PageID.6839. He was treated with proton-pump inhibitor medication, but the condition persisted. *Ibid.* In February 2025, he tested positive for H. pylori, a species of bacteria known to cause ulcers and (less frequently) cancer. *Ibid.*; *see generally* Mayo Clinic, *Helicobacter pylori (H. pylori) infection*, https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited July 14, 2026). He was treated with antibiotics. ECF No. 845-3, PageID.6839. Soto continued to report blood in his stool and pain and bloating in his abdomen. *Ibid.*

Soto was diagnosed with adenocarcinoma (stomach cancer) in May 2025, following a colonoscopy and other testing. *Ibid.* He then was transferred to FMC Butner, a BOP medical facility, where he started chemotherapy treatment in October 2025. *Ibid.* Chemotherapy continued into February 2026. *Ibid.* He then received a robot-assisted distal gastrectomy — a surgery in

which a portion of his stomach was removed — at Duke University Medical Center in late March 2026. ECF No. 845-3, PageID.6923. He was ambulatory within a few days after the surgery. *Id.* at PageID.6923-24. He was prescribed tramadol for pain management after the surgery but was instead given desipramine because tramadol was not stocked in the prison pharmacy. ECF No. 842-5, PageID.6812. A pain management pharmacist recommended desipramine as "the closest alternative to Tramadol" that was available. *Ibid.* An oncologist's note from mid-April 2026 indicated that Soto was "recovering well from surgery." ECF No. 842-5, PageID.6809.

Soto's cancer has spread to at least one lymph node. *Ibid.*; ECF No. 848-2, PageID.6945. As of April 2026, doctors did not intend to give him any more chemotherapy treatments, as he apparently suffered neuropathy after his last course of treatment. ECF No. 842-5, PageID.6809. However, the medical records suggest that his doctors might have changed course, as a note from early July 2026 states that Soto "is still currently undergoing chemotherapy." ECF No. 848-3, PageID.6946. In any case, he is receiving durvalumab, an immunotherapy medication used to treat cancer (either in lieu of or in addition to chemotherapy). *See* ECF No. 842-5, PageID.6809. As of April 2026, his doctors planned to treat him with 12 cycles of durvalumab, *ibid.*, and a July 2026 medications list indicates that he still is receiving the treatment, ECF No. 848-3, PageID.7001.

One of the prison records states that Soto also has glioblastoma, an aggressive form of brain cancer. ECF No. 842-5, PageID.6807. Observing that glioblastoma is an extremely serious diagnosis, the Court ordered supplemental briefing for the parties to elaborate on the condition. ECF No. 847. In its supplemental brief, the government submitted a letter from Fine Song, a medical officer at FMC Butner, stating that the medical record referencing glioblastoma was erroneous and Soto does not have brain cancer. ECF No. 848-2, PageID.6945.

Per the medical officer's letter, Soto's 5-year survival expectancy for his stomach cancer is between 45 and 50 percent. *Ibid.* He is not anticipated to die within the next 12 months. *Ibid.* The letter indicates that Soto "has had no limitations for his Activities of Daily Living (ADLs)," *ibid.*, although a recent medical record states that Soto "has ongoing numbness that sometimes interferes with daily activities such as buttoning his shirt," potentially related to his chemotherapy-induced neuropathy, ECF No. 848-3, PageID.6950. His attorney also reports in one of the briefs. that Soto experiences bloody fingers because of his difficulties using his hands. ECF No. 849, PageID.7023. Soto is receiving gabapentin for his neuropathy and he "reports improvement" with the treatment. ECF No. 848-3, PageID.6946. He originally was scheduled to receive EMG/NCV testing to evaluate his neuropathy further, but it was canceled because it was "unlikely to change [his] plan of care." *Ibid.* The testing may be "reordered in the future if symptoms persist." *Ibid.*

On December 21, 2025, Soto submitted a request for compassionate release to a prison social worker. ECF No. 836-1, PageID.6482. The warden denied the request on December 23, 2025. ECF No. 845-4. Soto then moved *pro se* for compassionate release on January 30, 2026. ECF No. 836. The Court appointed counsel, who filed a supplemental brief in support of the motion on May 1, 2026. ECF No. 842. The government opposes the motion. The parties submitted supplemental briefing in July 2026, including additional medical records. ECF No. 848, 849.

II.

"[A] federal court 'may not modify a term of imprisonment once it has been imposed,'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)), but this "rule comes with a few exceptions, one of which permits compassionate release," *ibid.* The request for such relief must be presented by a motion filed in federal court, either by the Director of the

Bureau of Prisons, 18 U.S.C. § 3582(c)(1)(A), "[o]r it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier,'" *Alam*, 960 F.3d at 832 (quoting 18 U.S.C. § 3582(c)(1)(A)).

Compassionate release is a concept that has come to be recognized as authorized by Congress in section 3582(c)(1)(A). It is an exception to the "rule of finality," which prohibits district courts from modifying a sentence "except in limited circumstances." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021). There are three requirements that must be satisfied before relief can be granted under this section, the first of which is that "extraordinary and compelling reasons warrant [a sentence] reduction." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). For the second requirement, the Court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Nicholson*, No. 21-1724, 2023 WL 4447881, at *1 (6th Cir. July 11, 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)). Finally, the Court must "'consider[] the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable.'" *Ibid.*

"[I]f each requirement is met, a court may — but need not — reduce a term of imprisonment." *Ibid.* (citing 18 U.S.C. § 3582(c)(1)(A)). On the other hand, "[i]f any of the requirements are not met, a court cannot reduce a sentence." *Ibid.*

Soto's primary argument in support of compassionate release rests on his contention that the BOP has failed to provide adequate medical care for his health conditions. He blames the BOP for failing to diagnose his stomach cancer until May 2025, even though he first started complaining about gastrointestinal issues in late 2022. He also insinuates that the BOP unduly delayed in

waiting to start his chemotherapy until October 2025, several months after his initial stomach cancer diagnosis. He asserts that his cancer is "spreading aggressively" and his health will be jeopardized if he is not released. He also relies on an NPR article detailing FMC Butner's history of delayed and inadequate treatment. *See* Meg Anderson, *1 in 4 inmate deaths happens in the same federal prison. Why?*, NPR (Sept. 23, 2023 6:00 AM), https://www.npr.org/2023/09/23/1200626103/federal-prison-deaths-butner-medical-center-sick-inmates. Additionally, Soto cites several cases where compassionate release was granted to defendants who, like him, suffered from Stage III cancer. *See United States v. Earl*, No. 22-20645, 2026 WL 381178, at *6 (E.D. Mich. Feb. 5, 2026); *United States v. Stavrakis*, No. 19-0160, 2025 WL 2897668, at *36 (D. Md. Oct. 9, 2025); *United States v. Bell*, No. 3:19-00066-TMB-MMS-3, 2023 WL 8890940, at *7 (D. Alaska Dec. 26, 2023).

Soto further asserts that the 18 U.S.C. § 3553(a) factors support compassionate release because he has shown evidence of rehabilitation — he only has had one disciplinary infraction since the last time the Court denied his motion for compassionate release, and he says that this infraction was based on his unauthorized possession of an extra pillow he was using to help with his stomach pain. He also argues that he would have been out of prison by now if he were eligible for earned time credits or halfway house time, and he only is ineligible for these credits because he is a removable noncitizen who will be deported upon conclusion of his sentence. Finally, Soto emphasizes that he has a plan for his living situation upon release; he will stay with his parents in Mexico while he seeks stabilizing medical treatment.

The government offers several reasons that the defendant's medical circumstances are not extraordinary and compelling. First, it emphasizes that Soto's condition is not terminal: his doctors are still treating him with an eye toward curing him, and his stomach cancer is categorized as Stage

III, meaning that it has not spread to distant parts of the body. Second, it contends that there is no evidence that Soto's condition is so severe that he cannot provide self-care in the context of the prison environment. Third, it argues Soto is not being denied any medically necessary care. It does not seem to dispute Soto's assertions that his medical care has been delayed, but the government argues that delays in receiving care do not amount to extraordinary and compelling circumstances as long as the inmate ultimately receives the necessary care. Although it acknowledges that the Court found in its last order that Soto no longer is dangerous, the government maintains that the 18 U.S.C. § 3553(a) factors do not favor compassionate release because the crimes for which the defendant was convicted were serious.

A.

The government concedes that Soto "has satisfied the exhaustion requirement." ECF No. 845, PageID.6824.

B.

The Sentencing Commission's policy statement provides context for inmates seeking to establish extraordinary and compelling reasons that justify relief. *See generally* U.S.S.G. § 1B1.13(b). The Court therefore "look[s] to applicable policy statements from the Sentencing Commission to determine what constitutes an extraordinary and compelling reason to grant compassionate release." *United States v. Williams*, 161 F.4th 951, 954 (6th Cir. 2025) (citation omitted). As a result, the first two steps of the compassionate-release inquiry — the existence of extraordinary and compelling reasons and the policy statements of the Sentencing Commission, *see id.* at 953 (quoting 18 U.S.C. § 3582(c)(1)(A)) — tend to merge into a single discussion.

1.

Soto principally argues that he is entitled to compassionate release because of his medical circumstances, including his stomach cancer and the BOP's alleged failure to identify it earlier. There are a few provisions in the Sentencing Commission's policy statements that could relate to his arguments.

First, section 1B1.13(b)(1)(A) states that extraordinary and compelling reasons exist if "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)." A specific prognosis or life expectancy is not required, and "[e]xamples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Ibid.* Soto characterizes his cancer as "metastatic" because it has spread to a nearby lymph node. That characterization is debatable, as the parties agree that Soto's cancer is at Stage III, ECF No. 846, PageID.6932; ECF No. 845, PageID.6825, while "metastatic cancer" generally refers to Stage IV cancers. Cleveland Clinic, *Cancer Staging*, https://my.clevelandclinic.org/health/diagnostics/22607-cancer-stages-grades-system (last visited July 14, 2026). But, in all cases, the provision does not apply because Soto's cancer is not terminal. Soto is not expected to die before the end of his sentence next year, and his five-year life expectancy is between 40 and 50 percent.

Second, section 1B1.13(b)(1)(B) explains that a defendant's serious medical or functional impairments can be an extraordinary and compelling circumstance warranting a sentence modification. To qualify, a defendant must show that he or she either is "(i) suffering from a serious physical or medical condition," "(ii) suffering from a serious functional or cognitive impairment," or "(iii) experiencing deteriorating physical or mental health because of the aging process" *and* that at least one of these conditions "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and . . . he or she

is not expected to recover." *Ibid.* Without trivializing the seriousness of his condition, Soto has not shown that his stomach cancer substantially impairs his ability to perform various daily activities. Although he experiences some difficulty with buttoning his shirts and other activities as a result of his chemotherapy-induced neuropathy, he has not shown that the tasks are unendurably difficult or that no accommodation could be made. As was the case when he last moved for compassionate release, "Soto has made no showing that any of his medical conditions, alone or together, *substantially* diminishes his ability to care for himself." *Soto*, 2024 WL 4846837, at *4.

Third, section 1B1.13(b)(1)(C) permits a finding of extraordinary and compelling circumstances where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." This provision does not help Soto because there is no indication that he is being deprived of necessary medical care. He does not identify any treatment that would be available to him outside of prison that the BOP is failing or refusing to provide.

Soto's briefing focuses on *delays* in care, rather than *denials* of care. He asserts that gastrointestinal symptoms were apparent as early as 2022, but he did not receive the colonoscopy that revealed his stomach cancer until early 2025 and did not commence chemotherapy until four months after that. Courts recognize that "an inmate's serious medical condition paired with the BOP's delays and indifference in providing treatment can constitute extraordinary and compelling reasons justifying compassionate release. *United States v. Earl*, No. 22-20645, 2026 WL 381178, at *6 (E.D. Mich. Feb. 5, 2026) (Berg, J.) (collecting cases). In *Earl*, for instance, Judge Berg ordered compassionate release after the BOP repeatedly delayed a surgery to remove a cancerous

mass on the defendant's kidney. *Id.* at *3-4. The delays demonstrated "a disturbing lack of responsiveness to a condition that carries potentially life-threatening implications." *Id.* at *6.

The situation here does not rise to that level. Although Soto complained of gastrointestinal issues in November 2022 and February 2023, including stomach pain, he was examined and provided treatment both times: when he complained of stomach pain in November 2022, he was diagnosed with infectious gastroenteritis and colitis and prescribed antibiotics; in February 2023, when he complained of blood in his stool, he was examined, given medicated pads, and advised to avoid excessive wiping. *Soto*, 2024 WL 4846837 at *2. When he sought treatment for acid reflux in 2024, he was given proton-pump inhibitors, and he received antibiotics again when intestinal bacteria were discovered. ECF No. 845-3, PageID.6839. He received a colonoscopy after symptoms worsened, at which point his treaters identified the cancer. *Ibid.* Although it is possible that Soto's providers might have recognized warning signs of cancer earlier, this history of treatment does not demonstrate "a disturbing lack of responsiveness" to a known medical condition. *Cf. Earl*, 2026 WL 381178, at *6.

The government has not explained the five-month delay between the cancer diagnosis and starting chemotherapy, but that delay does not necessarily indicate indifference toward Soto's condition. The parties have not provided the Court with any medical literature or other sources from which the Court can assess the propriety of the delay. But Soto was receiving some form of treatment or evaluation in the months following his May 2025 diagnosis, including a CT scan in June 2025 and a PET scan in July 2025, ECF No. 845-3, PageID.6839, so it does not appear that BOP was simply ignoring his condition. And the fact remains that Soto ultimately was provided with chemotherapy and surgery for his condition, and he continues to receive immunotherapy

treatment. Therefore, he cannot show that he is being denied necessary care so as to demonstrate extraordinary and compelling reasons under section 1B1.13(b)(1)(C).

There is no doubt that FMC Butner has a troubled history of delayed and inadequate medical care, as is emphasized in an article shared in Soto's brief. But Soto's records do not demonstrate a history of medical neglect, or that his condition is terminal, or that his ability to care for himself has been substantially reduced. His medical circumstances therefore do not provide a basis for compassionate release.

2.

Soto's motion also alludes to his rehabilitation while in prison. Although rehabilitation alone may not be considered as an extraordinary and compelling reason, *see Hunter*, 12 F.4th at 572 (citing 28 U.S.C. § 994(t)), the Sentencing Commission's recent amendment emphasizes that it may be considered "in combination with other circumstances," U.S.S.G. § 1B.13(d). As the Court observed in ruling on Soto's last motion, Soto has taken classes, continued employment in prison, and has a favorable (but not spotless) disciplinary record. *Soto*, 2024 WL 4846837, at *6. The Court explained, however, that "Soto's work towards rehabilitation is commendable, but it does not appear that his efforts are *extraordinary* in light of the general expectation that individuals participate in programming while incarcerated." *Soto*, 2024 WL 4846837, at *6 (citation omitted). Soto asserts that he has continued to take classes until mid-2025, when his health worsened, and has a generally positive disciplinary record. ECF No. 842, PageID.6788. As before, his good behavior and focus on personal development is to be celebrated, but it does not make his rehabilitation extraordinary.

Considered together or separately, the proffered reasons for compassionate release are not extraordinary and compelling.

C.

Because Soto cannot demonstrate that extraordinary and compelling reasons support his release, the Court need not evaluate the section 3553(a) factors. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021). The Court "presume[s]" that the balancing of the section 3553(a) factors it completed at Soto's resentencing a few years ago "remains an accurate assessment as to whether those factors justify a sentence reduction" today and weighs against a sentence reduction. *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021).

III.

Soto has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's third motion for compassionate release (ECF No. 836, 842) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 21, 2026